UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CATHLEEN S.,[1]

                            Plaintiff,                **DECISION AND ORDER**

v.                                       6:25-cv-06056-JJM

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [7, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 870-page administrative record [3] is presumed. On April 28, 2022, plaintiff filed an application for Social Security Disability ("SSD") benefits and Supplemental Security Income ("SSI"), alleging disability beginning October 31, 2021. Administrative Record [3] at 18. Plaintiff alleged disability due to two back surgeries; degenerative disc disease; iliotibial band syndrome; sciatica; osteoarthritis of both hands;

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020, in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

tendonitis of the right arm; fibromyalgia; arthritis of the back; chronic pain; and severe depression. Id. at 81. Plaintiff's claim was denied initially and again upon reconsideration. Id. at 18. Plaintiff requested a hearing. Id.

## A.     The Hearing

On January 11, 2024, Administrative Law Judge ("ALJ") Paul Goodale conducted a telephonic hearing, at which plaintiff, represented by a non-attorney representative, Tara Tomory, and a vocational expert, Timothy Andenmatten, appeared and testified. Id. at 35-82.

At the time of the hearing, Plaintiff was 52 years old and lived with her husband. Id. at 42. She most recently worked part-time as a restaurant hostess. Id. at 44-45. Previously, she worked at several other establishments as a hostess and waitress, and she worked briefly in a warehouse. Id. at 45-48. She stopped working in the warehouse role because she could not stand for as long as was required. Id. at 48. In each role, she did not need to lift heavy items weighing more than 20 pounds. Id. at 47-48.

Following the onset of her disability in October 2023, plaintiff worked part-time as a hostess, but it did not rise to the level of substantial, gainful employment. Id. at 50. She testified she was let go from this position after calling in sick three times in five months due to back pain, which was unacceptable to the employer. Id. at 50-51.

Plaintiff testified that she stopped working because of chronic back pain, pinching pain down her right side and leg, and achilles tendinitis, which made it difficult for her to stand or sit in one spot for prolonged periods of time. Id. at 51-52. Her pain stemmed from two back surgeries. Id. at 54. Her most recent surgery took place in 2012. Id. Since the 2012 surgery, she has undergone physical therapy and cortisone injections to manage her symptoms. Id. She also had weak, aching hands and difficulty lifting or carrying things due to osteoarthritis and bone

spur removal surgery on her right hand. Id. at 51-53. She could take care of her personal needs without assistance, including getting dressed, making meals, and cleaning up after herself. Id. at 56. However, she only showered every few days due to the difficulty. Id. She infrequently grocery shopped, but she was able to walk across the street from her apartment to the grocery store and back with small loads. Id. at 57.

Plaintiff testified that she was only able to sit upright in a regular chair for a couple minutes before pinching in her back and leg made it too uncomfortable. Id. at 58. She tried to avoid standing still altogether, even with support to lean on, due to the pain and opted to walk when working as a hostess to avoid standing or sitting in one spot. Id. at 59, 61. She also avoided stairs due to the pressure on her right leg. Id. at 65. She did not utilize a cane or other assistance while walking. Id. at 62.

Plaintiff testified her hands hurt constantly, and she had trouble holding things due to her poor grip. Id. at 64. The heaviest object she was able to lift and carry in her regular life was a gallon of milk. Id. She had difficulty and pain manipulating things like zippers, buttons, and shoelaces with her hands, especially with her right hand. Id. at 65.

Plaintiff spent most of her free time lying in a recliner with her feet up to alleviate discomfort. Id. at 58. Bending over or squatting to pick up items caused her discomfort. Id. at 65-66. Occasionally, physical overactivity immobilized her with pain, and she needed to recover by lying in her recliner with a heating pad and taking pain medication, sometimes for several days. Id. at 66. Her back pain caused her difficulty falling and staying asleep; she took sleeping pills and typically woke up every couple hours to change positions. Id.

Vocational expert Timothy Andenmatten testified that plaintiff had past relevant work as a hostess, waitress, and fast-food worker. Id. at 70. He testified that at the light

exertional level with limitations of lifting up to 10 pounds frequently, 20 pounds occasionally, standing and walking up to 6 hours, sitting for up to 6 hours, and only frequent handling and grasping, plaintiff could still perform as a hostess and waitress but not as a fast-food worker. Id. at 71-72. He testified that there were additional jobs that existed in the national economy that such a person could perform. Id. at 72.

With a stricter handling and grasping limitation of only occasional handling and grasping, plaintiff's past relevant work would be ruled out, but there were still jobs that existed in the national economy that such a person could perform. Id. at 72-73. With the original, less restrictive, frequent handling and grasping limitation, but with additional limitations in concentration and pace and persistence causing the person to be off task for 20% or more of an eight-hour workday, there would not be jobs available in the national economy. Id. at 74. He testified that, based on his professional experience, needing off-task time exceeding 10% of the workday, or having more than one unscheduled absence per month on average, would be work preclusive. Id. at 74-75.

At the conclusion of the hearing, plaintiff's representative stated that the record could be closed. Id. at 77.

**B.    ALJ Goodale's Decision**

On May 1, 2024, ALJ Goodale issued a Notice of Decision concluding that plaintiff was not disabled from October 31, 2021, through the date of his decision. Id. at 17-29. He found that plaintiff had the following severe impairments: lumbar degenerative disc disease status post remote surgeries; lumbar post laminectomy syndrome; iliotibial band syndrome; right leg osteoarthritis; obesity; and bilateral carpal tunnel syndrome. Id. at 20. ALJ Goodale determined that the medical evidence of record was insufficient to establish a medically

-4-

determinable diagnosis for the plaintiff's alleged fibromyalgia, bilateral hand osteoarthritis, and right arm tendonitis. Id.

ALJ Goodale determined plaintiff's medically determinable impairments did not meet or medically equal the severity of any listed impairments in the disability regulations. Id. at 22. He considered listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and 1.18 (abnormality of a major joint). Id. He determined that plaintiff did not meet the requirements of listing 1.15 because it required the plaintiff's lumbar degenerative disc disease to result in neurological signs of muscle weakness during physical examination, and she exhibited 5/5 motor strength throughout her lower extremities bilaterally. Id. He determined that plaintiff did not meet the requirements of listing 1.18 because it required the plaintiff's bilateral carpal tunnel syndrome to result in an inability to use both upper extremities for work-related activities involving fine and gross movements, and she exhibited a full range of motion in her fingers and 5/5 motor strength in her upper extremities bilaterally. Id. at 22-23.

ALJ Goodale found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §416.1567(b) with several additional limitations:

> "[C]laimant has the [RFC] to perform light work . . . but with the following limitations: she can occasionally stoop, crouch, crawl, and kneel, can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. She can do frequent handling and grasping bilaterally. She should avoid concentrated exposure to workplace hazards such as dangerous machinery (excluding motor vehicles) and unprotected heights. The claimant could not do assembly-line type work (i.e., outwardly paced, working in close tandem with co-workers), but could do individual table/bench work."

Id. at 23.

ALJ Goodale found that plaintiff could perform her past relevant work as a hostess and waitress, and, alternatively, there were other jobs that existed in significant numbers in the national economy that she could perform. Id. at 28. He determined that, while plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the medical and other evidence in the record did not support the severity of the plaintiff's alleged symptoms. Id. at 24. Accordingly, he found that plaintiff was not disabled. Id. at 29.

On December 5, 2024, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 1.

**C.        Relevant Medical Evidence**

On September 1, 2022, Dr. Matthew Kruppenbacher, a treating pain management physician, treated plaintiff for chronic back pain. Id. at 515-19. Plaintiff reported worsening chronic back pain radiating to her right leg. Dr. Kruppenbacher noted plaintiff had a normal gait, exhibited 5/5 motor strength throughout, and reflexes were absent bilaterally for Hoffman and ankle clonus. Id. at 517-18. Dr. Kruppenbacher referred plaintiff for an MRI on her lumbar spine. Id. at 518.

On October 6, 2022, state agency consultant Dr. Harbinder Toor completed an internal medicine consultative examination. Id. at 473-79. Plaintiff reported a history of chronic lower back pain due to degenerative disk disease, an injury she had at a young age, and two subsequent back surgeries in 2022 and 2020. Id. at 474. She reported persistent pain in the lower back that radiates to the legs, especially her right leg, exacerbated by iliotibial band syndrome. Id. Dr. Toor noted plaintiff had an abnormal, painful gait, had difficulty getting on and off the exam table, and was able to complete only 50% of a full squat. Id. at 475. Dr. Toor assessed

-6-

plaintiff with moderate limitations in standing, walking, sitting, squatting, bending, lifting, and carrying. Id. at 478. An x-ray of the plaintiff's lumbar spine revealed no acute fracture or subluxation, status post L5-S1 anterior and posterior fusion and L5 laminectomy, and Grade 1 anterolisthesis of L4 over L5 with moderate degenerative change at the L4-L5 level. Id. at 478.

Among other conditions and symptoms, plaintiff also reported hand pain from arthritis and carpal tunnel syndrome. Id. at 474. Plaintiff had surgery on her hands in 2020. Id. Dr. Toor noted that plaintiff's finger dexterity was not intact bilaterally, and she had 3/5 grip strength bilaterally, with mild to moderate difficulty doing fine motor activities with the hands. Id. at 476-77. An x-ray of the plaintiff's right hand revealed no abnormalities. Id. at 478.

From December 2, 2022, to March 24, 2023, Dr. Marissa Dombovy-Johnson, a treating sports medicine physician, treated plaintiff for chronic lower back pain, and pain in her right leg and arm. Id. at 489-92, 495-97, 502-08, 526-30. Plaintiff reported pain throughout the right side of her body since she was 17 years old. Id. at 503. Plaintiff had diffuse tenderness to palpation in the lumbar spine, sacroiliac joint, right greater than left, and greater trochanteric bursa and iliotibial band on the right. Id. at 505. A facet loading test was positive bilaterally for pain; a Patrick's/FABERE test was positive on the right; a Gaenslen test was positive on the right; a Fortin finger was test was positive on the right. Id. However, she had 5/5 motor strength in her bilateral extremities, and she walked with a non-antalgic gait. Id. Dr. Dombovy-Johnson noted an MRI of the plaintiff's lumbar spine on October 20, 2022, revealed mild anterolisthesis at L4-5, increasing facet arthropathy, and mild right foraminal stenosis. Id. at 506. Dr. Dombovy-Johnson administered a sacroiliac injection on January 17, 2023. Id. at 495-97. Plaintiff did not think the treatment provided her with any substantial relief. Id. at 490.

On December 19, 2022, state agency reviewing physician Dr. S. Naroditsky assessed plaintiff with the ability to perform a range of light work. Id. at 92. Dr. Naroditsky opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and should avoid concentrated exposure to hazards. Id. at 88-90. Dr. Naroditsky concluded that plaintiff did not have manipulative limitations. Id. at 90. Dr. Naroditsky cited treatment notes from November 10, 2021, stating that plaintiff reported hand weakness, and treatment notes from April 28, 2022, stating that plaintiff reported stretching and moving around helps with pain. Id. Dr. Naroditsky also cited Dr. Toor's consultative examination on October 6, 2022. Id. Dr. Naroditsky believed that Dr. Toor's opinion overestimated the severity of the plaintiff's limitations, as Dr. Toor did not treat or examine the individual for her hand pain, and the opinion lacked substantial medical evidence. Id. at 91.

On April 26, 2023, state agency medical consultant Dr. S. Putcha concurred with Dr. Naroditsky's findings, except that Dr. Putcha assessed some postural limitations. Id. at 98-100. Dr. Putcha additionally cited Dr. Dombovy-Johnson's treatment notes regarding plaintiff's MRI on October 20, 2022, sacroiliac joint injection on January 17, 2023, and follow-up virtual visit on March 24, 2023. Id. at 99-100.

On January 16, 2024, Dr. Christopher Haydanek completed a medical source statement. Id. at 865-66. Dr. Haydanek had treated the plaintiff for lumbar degenerative disc disease and postlaminectomy syndrome since August 16, 2021. Id. at 865. He cited imaging that demonstrates the plaintiff's degenerative disc disease along with her prior back surgeries. Id. He noted that plaintiff's prognosis was fair, with chronic, daily lower back pain. Id. Dr. Haydanek opined that plaintiff could lift or carry 20 pounds rarely, 10 pounds occasionally, and less than 10

pounds frequently, and that plaintiff could rarely crouch, squat, or climb stairs or ladders, and occasionally twist and stoop. Id. at 865. She could sit for 6 hours and stand or walk for 2 hours in an 8-hour workday. Id. at 866. She could walk 1-2 city blocks without rest or pain, sit for 2 hours at one time and stand for 30 minutes at one time. Id. at 865-66. Dr. Haydanek opined that plaintiff's pain significantly impaired her daily functioning and estimated she would likely miss work four days per month due to her impairments or treatment. Id. at 866.

Dr. Haydanek treated plaintiff on a reoccurring basis beginning in August 2021. Id. at 865. On August 16 and 30 and September 13 and 28, 2021, plaintiff underwent osteopathic manipulative treatment with Dr. Haydanek. Id. at 383-408. A back exam revealed no spinous process tenderness on palpation but pain on paraspinal palpation in lumbar and thoracic region with spasticity in associated muscle groups. Id. at 379, 386, 389, 391, 406. On August 30, 2021, a back examination also showed spasm and pain on palpation over the piriformis bilaterally, right greater than left. Id. at 397. She reported decreased pain and improved range of motion following OMT. Id. at 393, 399.

On November 10, 2021, plaintiff underwent osteopathic manipulative treatment with Dr. Haydanek. Id. at 380. She reported chronic back pain and weakness in her hands since having surgery, causing her to repeatedly drop items. Id. at 377, 381. Plaintiff stated that her pain left her unable to do much, including work, but that pain medication helped her achieve better function. Id. at 377. Dr. Haydanek stressed the importance of home stretching and exercise to maintain the progress made during OMT sessions. Id. at 381. On December 27, 2021, plaintiff reported continued trouble sleeping, but her pain medication helped her maintain function at home. Id. at 375. She reported minimal home exercise due to a busy schedule. Id. at 374. On March 30, 2022, she reported her medication was not helping. Id. at 367. Dr. Haydanek had

referred plaintiff to a non-surgical spine specialist and for counseling, but plaintiff had not followed up. Id. at 368-71. He discussed with her the importance of following his recommendations to improve her functioning. Id. at 371. On April 28, 2022, plaintiff reported new pain medication improved her symptoms, and she believed stretching at home and staying active helped with pain as well. Id. at 360-61. However, she still was unable to sit in a chair for long periods of time, and Dr. Haydanek increased the dosage of her pain medication. Id. at 363.

Dr. Haydanek again treated plaintiff for pain on September 8, 2022, and December, 12, 2022. Id. at 498-501, 512-15. In December, plaintiff reported right hand pain due to a bone spur. Id. at 498. Dr. Haydanek diagnosed plaintiff with lumbosacral radiculopathy and lumbar and sacral arthritis. Id. at 500. He referred her for an x-ray of her left thumb. Id. at 501. He treated her again on April 26, 2023, for depression, left arm pain, and palpitations. Id. at 836. He noted she had decreased pain, increased enjoyment of life, and functional improvement when on opioid treatment. Id. On examination, she was not in acute distress, but she had mild pain on palpation over the area of the rotator cuff muscle distribution, minimal pain and normal strength with lift off and internal rotation, an active range of motion, and 5/5 arm strength, extension, and grip. Id. at 839-40.

## ANALYSIS

Plaintiff challenges ALJ Goodale's evaluation of the medical opinion evidence and resulting RFC, arguing that if ALJ Goodale had included the greater physical limitations assessed by Dr. Haydanek and Dr. Toor, plaintiff's past relevant work as a waitress and hostess would have been precluded. First, plaintiff argues that ALJ Goodale improperly discounted the opinion of treating physician Dr. Haydanek by failing to adequately address the opinion's supportability and by finding it inconsistent with the medical evidence based on an inaccurate

reading of the record. Plaintiff's Memorandum of Law [7-1] at 13-26. Second, plaintiff argues

that the ALJ improperly evaluated the consultative opinion of Dr. Harbinder Toor and the prior

administrative medical findings concerning plaintiff's manipulative limitations. Id. at 26-29.

Specifically, plaintiff contends that the ALJ failed to adequately explain his evaluation of the

supportability and consistency of those opinions, improperly rejected Dr. Toor's assessed

limitation in fine motor activities, and substituted his own lay judgment for that of the

consultative examiner. Id. The Court addresses each argument in turn.

## A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)). "[T]he threshold for such evidentiary sufficiency is not high . . . [substantial

evidence] means—and means only—'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion'". Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (*quoting*

Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938)).

The Commissioner's findings of fact must be upheld unless "a reasonable

factfinder would have to conclude otherwise". Brault v. Social Security Administration,

Commissioner, 683 F.3d 443, 448 (2d Cir. 2012). "If evidence is susceptible to more than one

rational interpretation, the Commissioner's conclusions must be upheld." McIntyre v. Colvin,

758 F.3d 146, 149 (2d Cir. 2014). However, "the substantial evidence standard is also not merely

hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the

ALJ's factual determinations". Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) (*quoting* McIntyre, 758 F.3d at 149).

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x. 53, 56 (2d Cir. 2013). The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Id. "[I]t is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole'". Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017)).

**B.      Did the ALJ err in his evaluation of Dr. Haydanek's opinion?**

Plaintiff first argues the ALJ improperly evaluated the medical opinion of treating physician Dr. Haydanek. Plaintiff contends that ALJ Goodale failed to adequately explain why he found the opinion of Dr. Haydanek, a treating physician, to have only limited persuasiveness. [7-1] at 15-26. Specifically, plaintiff contends that the ALJ's discussion of the opinion's supportability and consistency was conclusory in failing to discuss the support provided in the opinion and treatment notes of Dr. Haydanek and the other providers. Id. at 15-23. Plaintiff further argues that the ALJ's conclusion that the opinion was inconsistent with the record rested

-12-

on an inaccurate characterization of the evidence, particularly the ALJ's reliance on plaintiff's reported improvement with treatment and what plaintiff characterizes as selective reliance on normal examination findings. Id. at 23-25.

I conclude that, although ALJ Goodale's discussion of the persuasiveness of Dr. Haydanek's opinion permits meaningful judicial review when considered in the context of the decision as a whole, and ALJ Goodale's determination was supported by substantial evidence. Social Security regulations dictate that the ALJ must "articulate . . . how persuasive [he] find[s] all of the medical opinions . . . in [claimant's] case record". 20 C.F.R. §416.920c(b). In so doing, "the ALJ must explain how he considered the 'supportability' and 'consistency' factors", and "may—but is not required to" discuss the other factors listed in §416.920c, such as the relationship with the claimant, specialization, or familiarity with program requirements. David C. v. Commissioner of Social Security, 2024 WL 376598, *4 (W.D.N.Y. 2024); *see* §416.920c(a)-(c).

Supportability focuses on how well a medical source itself supported and explained its own opinion. 20 C.F.R. §404.1520c(c)(1). The persuasiveness of a medical opinion increases with the relevance of the objective medical evidence and supporting explanations offered by the source. Id. Consistency focuses on whether the medical opinion is consistent with evidence from other medical and non-medical sources on the record. Id. §404.1520c(c)(2). The persuasiveness of a medical opinion increases the more consistent it is with the broader record. Id.

Although an ALJ must explain how those two factors were considered, the regulations do not require an exhaustive discussion of every piece of evidence that contributed to the decision. *See* Cichocki v. Astrue, 729 F.3d 172, 177-78 (2d Cir. 2013). While the explanation

cannot be a mere conclusory statement, the ALJ must only provide enough explanation to permit

a reviewing court to trace the ALJ's reasoning and conduct meaningful judicial review. *See*

Jaleesa H. v. Commissioner of Social Security, 580 F. Supp. 3d 1, 8-9 (W.D.N.Y. 2022);

Cichocki, 729 F.3d 172, 177 (2d Cir. 2013).

The ALJ met that standard here. ALJ Goodale found Dr. Haydanek's opinion to

have limited persuasiveness because, in his opinion, it was not supported by the medical

evidence of record.

> "Dr. Haydanek's opinion for less than sedentary work with 4
> absences per month due to her physical impairments (Exhibit 15F)
> is inconsistent with the claimant's reports of improved lower back
> pain with treatment, physical examinations showing 5/5 motor
> strength in all extremities, as well as objective imaging showing
> mild to moderate lumbar degenerative disc disease (Exhibits 2F,
> 4F, 6F, 7F, 9F, 10F, 12F, and 13F)."

[3] at 27.

ALJ Goodale vaguely cited eight exhibits spanning hundreds of pages of the

record. [3] at 27; [7-1] at 18. A more detailed discussion linking specific evidence to the

challenged portions of Dr. Haydanek's opinion would undoubtedly have made the ALJ's

reasoning easier to follow. Nonetheless, brevity alone does not necessitate remand. The question

is whether the Court can discern the ALJ's rationale and conduct meaningful judicial review. *See*

Loucks v. Kijakazi, 2022 WL 2189293, *2 (2d Cir. 2022). Here, ALJ Goodale provided

sufficient explanation for this court to trace his reasoning and understand his rationale.

It should be noted that, at only two pages long and containing primarily checkbox

responses, Dr. Haydanek's opinion itself was essentially devoid of supporting explanation for

ALJ Goodale to discuss. [3] at 865-66. What little supporting explanation Dr. Haydanek did

provide, as the Commissioner noted, only referred to diagnoses the ALJ accepted in his findings,

the plaintiff's subjective reports of pain, and imaging results that the plaintiff's own specialist provider assessed did not explain the severity of her alleged symptoms. *See* [9-1] at 14; [3] at 558-59, 865-66.

Read in the context of the broader decision, ALJ Goodale's analysis of Dr. Haydanek's opinion reflected a comparison of the opinion to Dr. Haydanek's own treatment notes and to the overall evidentiary record, fulfilling the regulations' supportability and consistency articulation requirements and sufficiently permitting judicial review. Before the RFC determination in the decision, ALJ Goodale undertook a detailed review of the longitudinal, objective medical evidence. [3] at 20-27. This included discussion of examinations documenting the plaintiff's generally intact strength, non-antalgic gait, and no focal neurological deficits; diagnostic imaging demonstrating postoperative degenerative changes; normal electrodiagnostic testing results; plaintiff's course of pain-management treatment; and the findings of plaintiff's treating specialists and consultative examiner. Id. Read against this discussion, the court can trace the ALJ's reasoning that Dr. Haydanek's restrictive limitations were not borne out by the longitudinal medical evidence, satisfying the articulation requirements of §404.1520c.

Plaintiff also argues the ALJ's analysis of Dr. Haydanek's opinion relied on an inaccurate characterization of the medical evidence, asserting that the ALJ selectively relied on normal examination findings while disregarding evidence of persistent pain, abnormal findings, and limited improvement in functioning with treatment. [7-1] at 23. I am not persuaded. The record contains conflicting evidence regarding the severity of plaintiff's impairments. As the Commissioner notes, even within a single visit, prior to her alleged disability onset date and while plaintiff was still working, Plaintiff reported simultaneously that back pain left her unable to do much, including work, yet Oxycodone helped her achieve better function and work a full

day. [3] at 447; [9-1] at 17. Examining the broader record, plaintiff reported certain treatments improved her pain and functioning while other treatments did not, as one might expect, and she repeatedly expressed that opiate medications enabled her to function and work. [3] at 431, 440, 447, 452, 543, 560, 568, 727, 752, 781, 805. This constitutes substantial evidence supporting the ALJ's finding that Dr. Haydanek's additional limitation of four absences per month was unwarranted.

The record certainly contains support for plaintiff's position that Dr. Haydanek's additional limitations were warranted. As plaintiff emphasizes, she consistently reported chronic low back pain, underwent extensive pain-management treatment, exhibited tenderness, muscle spasm, reduced lumbar range of motion, and positive straight-leg raising on various examinations, and imaging confirmed postoperative degenerative changes. [7-1] at 16-17, 19-20, 22-26. All of this could support a more restrictive RFC finding.

However, the existence of evidence supporting the plaintiff's position does not establish reversible error. The issue is not whether the evidence could support a more restrictive RFC. Rather, the question is whether substantial evidence supports the RFC the ALJ adopted. *See* Biestek, 587 U.S. at 103; Brault, 683 F.3d at 448. Here, the ALJ reasonably concluded that the longitudinal record—including the findings of plaintiff's treating specialists, objective diagnostic testing, plaintiff's response to treatment, and the prior administrative medical findings—did not corroborate the degree of limitation reflected in Dr. Haydanek's opinion. [3] at 20-27. Significantly, Dr. Haydanek's opinion was the only medical opinion in the record assessing a limitation of that degree. Id. at 25-27. Although plaintiff points to evidence that could support a different conclusion, resolving such contradictory evidence is the province of the Commissioner, not the court. [7-1] at 23-26; *see* Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.

-16-

2002). The ALJ did so and arrived at an RFC grounded in the medical evidence, directly aligned with the findings of Drs. Naroditsky and Putcha. [3] at 26.

Accordingly, while I agree that the ALJ's discussion of Dr. Haydanek's opinion could have been more robust, I nevertheless conclude that the ALJ's decision, read as a whole, adequately explains his analysis of the persuasiveness of Dr. Haydanek's opinion, including its supportability and consistency, and substantial evidence supports the ALJ's evaluation of Dr. Haydanek's opinion and the resulting RFC. Thus, plaintiff has not demonstrated a reversible error in applying 20 C.F.R. §404.1520c. See Loucks, 2022 WL 2189293, at 2; Monroe v. Commissioner of Social Security, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where the ALJ's reasoning could be gleaned from the decision as a whole).

**C.    Did the ALJ err in his analysis of the consultative examination and prior administrative medical findings?**

Plaintiff further argues that the ALJ improperly evaluated the opinion of consultative examiner Dr. Toor and the prior administrative medical findings of Drs. Naroditsky and Putcha. [7-1] at 26-29. Specifically, plaintiff contends that ALJ Goodale erred by failing to incorporate into the RFC Dr. Toor's assessed moderate limitations in standing, walking, lifting, and carrying and mild-to-moderate limitations performing fine motor activities with the hands, and the ALJ improperly substituted his own lay opinion without explanation. Id. at 26-28. Plaintiff further argues that the ALJ failed to adequately explain the supportability and consistency of Dr. Toor's opinion and the prior administrative medical findings, as required by 20 C.F.R. §404.1520c. Id. at 28-29.

I conclude that ALJ Goodale did not err in his evaluation of Dr. Toor's opinion, that his evaluation of Dr. Toor's opinion and the prior administrative medical findings permits

meaningful judicial review and thus satisfies §404.1520c, and the RFC is supported by substantial evidence.

While it is correct, as plaintiff argues, that an ALJ may not selectively pick and choose only parts of a medical opinion that supports the ALJ's ultimate RFC determination, an ALJ is not obligated to explicitly reconcile every piece of medical evidence or adopt every limitation contained in an opinion he finds persuasive. *See* Matta, 508 Fed. App'x. at 56; Maenza v. Colvin, 2016 WL 1247210, *12-13 (W.D.N.Y. 2016). All that is required is that the ALJ explain his reasoning sufficiently to permit meaningful judicial review, and the resulting RFC must be supported by substantial evidence. *See* Loucks, 2022 WL 2189293, at 2.

ALJ Goodale met that standard here. In formulating the RFC, ALJ Goodale explicitly incorporated and cited to Dr. Toor's findings, explaining that he added a limitation of only frequent bilateral handling and grasping "to account for subjective reports of bilateral hand pain and numbness causing difficulty holding onto items as well as objective clinical findings showing reduced grip strength bilaterally and tenderness in both wrists (Hearing Testimony; Exhibit 4F)". [3] at 26; [7-1] at 26. Thus, ALJ Goodale did not reject Dr. Toor's manipulative findings or fail to account for them in the RFC. Rather, he concluded that those findings supported limiting plaintiff to frequent bilateral handling and grasping, but no greater manipulative restrictions.

Plaintiff nevertheless argues that, because the ALJ found Dr. Toor's opinion persuasive, he was required to adopt Dr. Toor's assessment of moderate limitations standing, walking, carrying and lifting, and mild-to-moderate limitations performing fine motor activities. [7-1] at 26-28. I disagree. The RFC determination is an administrative finding reserved to the Commissioner, and an ALJ is not required to adopt wholesale every limitation identified in a

medical opinion, even one the ALJ finds persuasive. *See* 20 C.F.R. §404.1546(c); Schillo v.

Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022); Matta, 508 F. App'x at 56.

Plaintiff interprets Dr. Toor's findings as suggesting further fine motor

manipulative restrictions, and that by only assessing gross manipulative restrictions, ALJ

Goodale substituted his lay opinion for Dr. Toor's opinion without any explanation. [7-1] at 27.

While the plaintiff points to evidence that could support greater fine motor handling limitations,

an ALJ's determination must be upheld even if the evidence is susceptible to more than one

rational interpretation, provided the ALJ's chosen interpretation is rational and supported by the

record. *See* Nunez v. Commissioner of Social Security, 164 F.4th 60, 70 (2d Cir. 2025).

Here, the ALJ's interpretation is supported by the record, and he did not

improperly substitute his own lay opinion for that of Dr. Toor. ALJ Goodale did not

independently interpret raw medical data or reject all medical opinion evidence concerning

plaintiff's manipulative functioning. Rather, he evaluated Dr. Toor's opinion together with the

prior administrative medical findings, plaintiff's treatment history, objective examination

findings, diagnostic imaging, and plaintiff's subjective complaints before determining the degree

of manipulative limitation supported by the record. [3] at 23-25. The ALJ expressly

acknowledged plaintiff's complaints of difficulty grasping and holding objects, as well as Dr.

Toor's finding of reduced bilateral grip strength. Id. at 25. He weighed those findings against

examinations showing full range of motion in plaintiff's fingers and 5/5 motor strength

throughout the upper extremities, as well as an x-ray of plaintiff's hand revealing no

abnormality, and concluded that the findings supported limiting plaintiff to frequent handling

and grasping, but not greater manipulative restrictions. Id. at 23-26. Resolving these evidentiary

conflicts and translating the medical evidence into an RFC are responsibilities entrusted to the ALJ, not the Court. *See* Schillo, 31 F.4th at 77-78; Matta, 508 F. App'x at 56.

ALJ Goodale's conclusion and the resulting RFC determination were further supported by the prior administrative medical findings of Drs. Naroditsky and Putcha. [3] at 26, 88-93, 98-100. Dr. Naroditsky did not assess any manipulative limitations and stated there was "no current clinical evidence . . . to support a [medically determinable impairment] for [plaintiff's] alleged hand impairment". Id. at 90. Dr. Naroditsky specifically considered Dr. Toor's more restrictive findings but concluded that Dr. Toor's opinion was "an overestimate of the individual's restriction/limitations" and unpersuasive, as the assessed limitation related to an impairment "for which [Dr. Toor] has not treated or examined the individual" and opted not to adopt them. Id. at 91. Dr. Putcha likewise did not assess any manipulative limitations. Id. at 99. ALJ Goodale found the opinions of Drs. Naroditsky and Putcha generally persuasive but added a frequent handling and grasping bilaterally limitation that neither physician assessed to "account for subjective reports of bilateral hand pain and numbness causing difficulty holding onto items as well as objective clinical findings showing reduced grip strength bilaterally and tenderness in both wrists (Hearing Testimony; Exhibit 4F)". Id. at 26. The ALJ's treatment of the evidence thus does not reflect a substitution of the ALJ's lay judgment for medical opinion; it reflects the resolution of competing medical evidence and the adoption of limitations supported by the record as a whole.

Plaintiff also argues that ALJ Goodale failed to adequately explain the supportability and consistency of Dr. Toor's opinion and the prior administrative medical findings of Drs. Naroditsky and Putcha in his discussion of the opinions' persuasiveness. [7-10] at 28-29. As discussed above, while an evaluation of an opinion's supportability and consistency

cannot be a mere conclusory statement, the ALJ must only provide enough explanation to permit the Court to trace the ALJ's reasoning and conduct meaningful judicial review. *See* 20 C.F.R. § 404.1520c(a)-(c); Jaleesa H. v. Commissioner of Social Security, 508 F. Supp. 3d 1, (W.D.N.Y. 2022); Cichocki, 729 F.3d 172, 177 (2d Cir. 2013).

Here, I am able to trace the ALJ's reasoning. In discussing Dr. Toor's opinion, the ALJ identified both the abnormal findings supporting the assessed limitations—including reduced grip strength, wrist tenderness, an abnormal gait, and limited lumbar range of motion— and the contrasting findings of full finger range of motion, 5/5 motor strength, and mild-to-moderate findings on diagnostic imaging. [3] at 23-26. The ALJ further explained that Dr. Toor's opinion was generally consistent with the longitudinal record, including examinations showing effective gait, normal motor strength and range of motion, objective imaging, and evidence of improvement with treatment. Id. at 25-26. The ALJ likewise explained that the findings of Drs. Naroditsky and Putcha were supported by plaintiff's reports of improvement with medication and steroid injections, examinations demonstrating 5/5 motor strength, effective gait, and normal range of motion, and imaging reflecting mild-to-moderate lumbar degenerative disease. Id. at 26. Although the ALJ's discussion was concise, it identified the evidence upon which he relied and permits the court to discern why he found the opinions generally persuasive, satisfying the articulation requirements of §404.1520c.

To the extent plaintiff argues that the RFC should have included greater limitations, plaintiff fails to meet her burden. "Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). Even if ALJ Goodale had given greater weight to Dr. Toor's assessment of moderate standing, walking, handling, or carrying limitations or

mild-to-moderate limitations doing fine motor activities with the hands, this would not have necessarily precluded an RFC finding for light work. *See* Tracey B. v. Commissioner of Social Security, 2024 WL 4799911, *4 (W.D.N.Y. 2024) (concluding, while collecting cases, that mild to moderate limitations were consistent with light work).

In sum, I agree with the Commissioner that the plaintiff's argument for incorporating further handling limitations into the RFC based on Dr. Toor's opinion does not constitute a legal error necessitating remand but merely constitutes a disagreement with the weighing of the evidence, which the deferential standard of review prevents this Court from reweighing. Snyder v. Commissioner of Social Security, 2023 WL 1943108, *3 (2d Cir. 2023) (citing Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016)).

Accordingly, I conclude that ALJ Goodale adequately explained his evaluation of Dr. Toor's opinion and the prior administrative medical findings, that the decision permits meaningful judicial review under §404.1520c, and that substantial evidence supports the resulting RFC.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and the plaintiff's motion for judgment on the pleadings [7] is denied.

**SO ORDERED**.

Dated: August 3, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge

-22-